NEW YORK LIFE INSURANCE COMPANY v. DANDRIDGE.

4-6272 149 S. W. 2d 45

Opinion delivered March 31, 1941.

*Louis H. Cooke* and *Rose, Loughborough, Dobyns & House,* for appellant.

*Arnett & Shaw,* for appellee.

McHANEY, J.   Appellees, Mrs. Dandridge and the First National Bank of Paris, Arkansas, brought this action against appellant to compel it to perform specifically a contract of life insurance issued by it to her on October 18, 1927.   The bank was made a party plaintiff because the policy had been pledged to it to secure an indebtedness.   The complaint alleged that appellant had wrongfully lapsed the policy on its records and had continued it as extended term insurance which would expire February 22, 1948.

Appellant defended on the ground that the policy lapsed for failure to pay the quarterly premium due July 18, 1939, within the grace period; that application for reinstatement was made by insured on September 18, 1939, in which she stated she was in the same condition of health as when the policy was issued; and that within the

preceding two years she had had no illness, disease or bodily injury, nor had she consulted or been examined by a physician. Appellant alleged that these statements were known by her to be false, in that she had consulted physicians at a Ft. Smith hospital and had been operated upon for a tumor of the breast within two years prior to her application for reinstatement, and had also consulted physicians within said period for other serious ailments. The policy was reinstated and it was alleged that in doing so it relied upon these false representations, and would not have reinstated same if she had stated the true facts regarding her condition of health and her consultations with and treatments by physicians. The answer further alleged that on May 10, 1940, insured notified it she desired to make a claim for disability benefits under the policy, and its investigation on this matter developed the fact that its approval of her application for reinstatement had been procured by said misrepresentations. It accordingly elected to rescind the reinstatement and tendered back all payments made, with interest, since reinstatement. The net value of the policy was thereupon applied to purchase extended insurance.

Appellees demurred to this answer which was sustained, and upon appellant's refusal to plead further, a decree was entered reinstating the policy and directing appellant to perform all its obligations as originally issued. This appeal followed.

The answer pleads and the demurrer concedes that the insured's policy was reinstated through fraudulent misrepresentation. The policy contained the following clauses, here material: "This policy may be reinstated at any time within five years after any default, upon written application by the insured and presentation at the home office of evidence of insurability satisfactory to the company and upon payment of overdue premiums with five per cent. interest thereon from their due date. Any indebtedness to the company at date of default must be paid or reinstated with interest thereon in accordance with the loan provisions of the policy."

"This policy shall be incontestable after two years from its date of issue except for nonpayment of pre-

mium and except as to provisions and conditions relating to disability and double indemnity benefits.''

"In event of default in payment of premium after three full years' premiums have been paid, the following benefits shall apply:

"(a) Temporary Insurance—Insurance for the face of the policy plus any dividend additions and any dividend deposits and less the amount of any indebtedness hereon, shall, upon expiry of the period of grace, be continued automatically as temporary insurance as from the date of default for such term as the cash surrender value less any indebtedness hereon will purchase as a net single premium at the attained age of the insured, according to the American Table of Mortality and interest at 3 per cent. This temporary insurance will be without participation in surplus.''

The question here presented for decision is exactly the same as was presented in *New York Life Ins. Co.* v. *Campbell*, 191 Ark. 54, 83 S. W. 2d 542, and that is, as stated by appellant: "Where the holder of a life insurance policy has allowed it to lapse and has obtained reinstatement by misrepresenting the condition of his health, does the incontestable clause in the policy operate immediately to preclude the insurer from attacking the reinstatement?'' This question was answered in the affirmative in that case, and we are now asked to reconsider and overrule it. It is conceded that unless we overrule that case, this must be affirmed. We agree that this concession is well taken, and are of the opinion that we would have to overrule also, in principle, all the cases cited therein, and particularly, the case of *Ill. Bankers Life Ass'n* v. *Hamilton*, 188 Ark. 887, 67 S. W. 2d 741, 94 A. L. R. 1194. Also, the decision in the Campbell case has been cited and quoted from with approval in the recent case of *Union Life Ins. Co.* v. *Bolin*, 201 Ark. 555, 145 S. W. 2d 734, where this language is used: "Stress is laid upon the fact that the trial court found—and was warranted in finding—that Bolin correctly answered the questions contained in the reinstatement application. But this fact is not of controlling importance. It would have been had

the policy been reinstated. In that event the company would be concluded by the fraud of its agent in not writing the correct answers given by Bolin in the application for the reinstatement. It was so held in the case of *New York Life Ins. Co. v. Campbell,* 191 Ark. 54, 83 S. W. 2d 542, where it was said: 'Even so, the insurer had a fair opportunity to make such investigation in reference to the truthfulness of the answers contained in the application for reinstatement prior to the reinstatement as it saw fit and when it accepted the insured's statements in reference to his health, and physical condition, and the policy was reinstated by the insurer, the door was forever closed to future investigation.' In that case the policy had been reinstated. Here, it had not been, and unless and until it was, there was no contract of insurance.''

The cases cited in *New York Life Ins. Co. v. Campbell, supra,* in addition to the Hamilton case, are *New York Life Ins. Co. v. Adams,* 151 Ark. 123, 235 S. W. 412; *Security Life Ins. Co. v. Leeper,* 171 Ark. 77, 284 S. W. 12; *Equitable Life Assur. Soc. v. King,* 178 Ark. 293, 10 S. W. 2d 891; and *Life & Cas. Ins. Co. of Tenn. v. McCray,* 187 Ark. 49, 58 S. W. 2d 199. It is asserted that these cases are not in point and do not support the Campbell case. With this we cannot agree. One effect of all these cases is, as stated in the Adams case, that ''the reinstatement was not granted as a gratuity on the part of the company, but as a part of the contract expressed in the policy itself to the effect that a reinstatement could be obtained, as a matter of right, at any time within five years after default 'upon presentation at the home office of evidence of insurability satisfactory to the company'.'' In that case, as also in the King case, the application for reinstatement provided that the statements by the insured as to his health, etc., contained therein should be deemed to be warranties, the exact language being ''I warrant them to be full, complete and true.'' This court said: ''The company had no right to enlarge the terms upon which reinstatement could be obtained, and the requirement of a warranty of the truth of the answers was a distinct enlargement of the contract.'' In the Leeper case, *supra,* that holding was reaffirmed by holding that

an application for reinstatement which contained an agreement that "in the event of self-destruction, whether sane or insane, within one year from the date of approval by the company of this application for reinstatement, the amount payable as a death benefit under said policy shall be equal to two annual premiums on said policy, and no more," was not binding on the insured. A headnote in that case is: "Where a life insurance policy gave an absolute right of reinstatement upon terms which did not include a new contract with reference to a forfeiture in case of suicide, the insurer had no right to impose that additional feature upon the assured in procuring a reinstatement." And in the McCray case, *supra,* another case of suicide, the policy provided against self-destruction "within one year from the date of issue of this policy," and we held that the one year clause ran from the date of the policy and not from the date of the reinstatement. The Hamilton case, *supra,* is almost exactly in point with the Campbell case and with this case. The reinstatement provisions and the incontestable clauses are substantially the same. In the Hamilton case, the policy lapsed for failure to pay a premium. Application was made to reinstate it in which false and fraudulent answers were given, and the policy was reinstated. The insured died more than two years after reinstatement. This court held that "the defense of falsity of statements in the application for reinstatement cannot avail the insurer" (188 Ark. 887, 67 S. W. 2d 743, 94 A. L. R. 1194) because of the incontestable clause in the policy. The late Justice BUTLER, speaking for the court, there said: "The insurer had all the time it desired to investigate the risk before accepting it and should, and likely does, anticipate that deceit might be practiced by applicants for insurance, and, through its own processes, has means to discover if such deceit has been practiced, and having announced its satisfaction to bind itself, no subsequently discovered circumstances should avoid the policy except the nonpayment of premiums." And, after citing and commenting on the cases above mentioned and others, said: "So, in the instant case the reinstatement created no new contract, but revived

the original to the same extent as if there had been no lapse. This rendered the incontestable clause available and certainly, since more than two years had elapsed between the date of the reinstatement and the death of the insured, this clause is effectual to waive all defenses except the one reserved in the contract, namely, the non-payment of premiums. Our cases cited have been approved, and their doctrine reaffirmed in the recent case of *Life & Casualty Ins. Co. of Tenn.* v. *McCray,* 187 Ark. 49, 58 S. W. 2d 199, and are in accordance with the weight of authority.'' Citing cases.

But, learned counsel for appellant say, that this Hamilton case is not in point and should be distinguished by the fact that the insured died more than two years from the date of reinstatement, whereas in the Campbell case and in the case at bar, the claim arose within two years from the date of reinstatement. Even so, can any one doubt, from a reading of that opinion that this fact made the slightest difference in the result reached? We think not.

So, we are asked to overrule not only *New York Life Ins. Co.* v. *Campbell, supra,* but the doctrine announced in all the other cited cases, all of which have a direct bearing on the decision in that case. We decline to do so, even though Judge BUTLER may have been mistaken in saying that the holding in the Hamilton case was in accordance with the weight of authority.

Moreover, on reconsideration of the holding in the Campbell case, we are further convinced of its soundness and that any other holding would do violence to the express language of the policy. The reinstatement clause above quoted gives the insured the absolute right to reinstatement at any time within five years after any default, upon written application by the insured and the ''presentation at the home office of evidence of insurability satisfactory to the company'' and the payment of overdue premiums with interest. This provision makes the company the sole judge of the evidence of insurability so presented. Of course it cannot refuse reinstatement arbitrarily. *Union Life Ins. Co.* v. *Bolin, supra.* If the company is not satisfied with the evidence presented, it

has the right to ask for such additional evidence as it may desire or to require a physical examination at the expense of the applicant, as the applicant is required to furnish or to present "evidence of insurability satisfactory to the company." But when such evidence is presented and the policy is reinstated, the matter is closed to further inquiry or question, if the time limited in the incontestable clause has expired. This clause plainly provides that: "This policy shall be incontestable after two years from its date of issue," with but two exceptions not applicable here. That provision limits a contest of the policy to two years from its date, and not from the date of any reinstatement. *Life & Cas. Ins. Co. of Tenn. v. McCray, supra.* So, if the two-year contestable period has expired when the policy is reinstated, the reinstated policy is not subject to contest by the express terms of said clause. The reinstated policy is not a new contract, but is the same old policy. It was so held in the McCray case and in the Hamilton case.

It is said that our holding in the Campbell case is contrary to the great weight of authority and this may be true. We do not stop now to determine. But, in so holding, we do not stand alone, as shown by the cases cited by Judge BUTLER in the Hamilton case, one of which *Wamboldt* v. *Reserve Loan Life Ins. Co.,* 191 N. C. 32, 131 S. E. 395, held that, where the original contract was changed six years after its date to cover double indemnity, total disability and premium waiver by riders attached to the original policy, bearing the same dates as the original, "such supplemental contracts were subject to incontestable clause contained in policies—and no defense was available to insurer on the supplemental contracts which was not available in action on policies."

Most of the courts, holding a contrary view to ours, seem to base their reasons on the idea that reinstatement creates a new contract and that the incontestable clause, although barred by lapse of time, is revived and becomes available to contest a reinstated policy for fraud. Our idea is that to so hold, something must be read into the policy that is not there, but might have well been there, had the company so desired. Such a holding changes the

incontestable clause to read that "this policy shall be incontestable after two years from its date of issue or after the date of any reinstatement thereof." It is well settled that courts do not, or should not, make contracts for the parties, and that the contract as written will be most strongly construed against the party writing it.

We are aware that the Campbell case has been criticized in some cases, see *Rosenthal* v. *New York Life Ins. Co.*, 94 Fed. 2d 675 and 99 Fed. 2d 578, and *Chambers* v. *Metropolitan Life Ins. Co.*, (Mo. App.) 123 S. W. 2d 29, but we are still of the opinion that it is not the proper function of a court to read words into an insurance policy for the benefit of the company that are not there, so as to make a defense available to the company that the literal unambiguous language of the policy excludes.

It may be proper to say that we agree that appellee should not be permitted to profit by her own fraud, but where the means of discovery of the fraud were available, as they were here to the appellant, at the expense of appellee, and it deliberately took a chance without making any investigation, then under the contract here presented, legal relief should be denied.

The judgment is accordingly affirmed.

The Chief Justice concurs in the holding that the appeal is controlled by the Campbell case, but dissents from the court's action in declining to overrule the precedents.