STATE FARM GENERAL INSURANCE COMPANY of Bloomington, Illinois *v.* Zeefer CHAMBERS, now Zeefer SMITH

76-115                          543 S.W. 2d 470

Opinion delivered November 15, 1976
[Rehearing denied December 13, 1976.]

638

*Crouch, Blair, Cypert & Waters,* for appellant.

*Robert S. Blatt,* for appellee.

J. FRED JONES, Justice. This is an appeal by State Farm General Insurance Company of Bloomington, Illinois, from an adverse decision of the Johnson County Circuit Court in a suit brought by the appellee Zeefer Chambers, now Zeefer Smith, to recover on a fire insurance policy covering a house trailer.

The facts appear as follows: In October, 1972, the appellee purchased a house trailer in Oklahoma and in March, 1973, she insured same against loss by fire with the appellant insurance company. In February, 1973, the appellee moved the house trailer to a trailer court at Lowell, Arkansas, where she occupied it with her two sons. In December, 1973, the appellee married Mr. Clyde Smith who lived in Johnson County, Arkansas. Upon her marriage to Smith she vacated the house trailer and moved to Johnson County with Mr. Smith. On March 22, 1974, she paid a renewal premium on the insurance.

A Mrs. Lois Donovan managed the trailer court at Lowell where the appellee's trailer was set up, and in January, 1974, as an accommodation to Mrs. Smith, she rented the trailer to a Mrs. Phillips. Mrs. Donovan collected the rent payments and remitted to the appellee. Mrs. Phillips lived in the trailer until March 25, 1974, when it was destroyed by fire. The appellee made claim against the appellant for payment under the policy and the claim was denied because of a provision in the policy which, in pertinent part, reads as follows:

This Company shall not be liable under Section 1 of this

policy:

\* \* \*

3. While the mobile home is rented to others for a period in excess of 60 days, except that it is permissible to rent a portion of the mobile home which is occupied by an insured to not more than two roomers or boarders.

It is clear from the evidence in this case that the trailer was rented to Mrs. Phillips on January 19, 1974, and that she continuously occupied it as a tenant until March 25, 1974, when the fire loss occurred. It is, therefore, clear from the evidence that the loss here involved occurred while the mobile home was rented to others for a period in excess of 60 days and clearly fell within the exclusionary provision as above set out.

The trial court, however, over the objections of the appellant, gave appellee's instruction No. 3 as amended. The appellee requested instruction No. 3 as follows:

You are instructed that the renewal of the insurance contract on March 24, 1974, was a separate and distinct contract between Mrs. Smith and State Farm Insurance Company.

The court gave the instruction as follows:

You are instructed that the renewal of the insurance contract on March 24, 1974, if you so find, was a separate and distinct contract between Mrs. Smith and State Farm Insurance Company.

We are of the opinion that the trial court erred in giving this instruction.

The insurance policy here involved was dated April 25, 1973, and was for a 12-month period from March 24, 1973, to March 24, 1974. The policy contained a provision as follows:

This policy will be renewed automatically subject to provisions of the forms then current, for each succeeding policy period thereafter and is subject to termination by this company only after ten (10) days' written notice to

insured and lienholder the premium for succeeding policy periods will be computed at this company's rates then current.

The appellee's attorney took full advantage of the court's instruction in his closing argument to the jury as follows:

The Court has instructed you and I will read what he said:

"You are instructed that the renewal of the insurance contract on March 24, 1974, if you so find, was a separate and distinct contract between Mrs. Smith and State Farm General Insurance Company.

Now, Your Honor has told you that that's the law. That that's a separate contract. Therefore, I submit to you that when she renewed this policy that she gets another 60 days, just like she got when she first took this policy out.

It was entirely proper for the appellee's attorney to argue as above set out under the instruction given, but the trial court erred in giving the instruction under the uncontroverted evidence in this case. The contract here involved was not a new and separate contract. No new policy was issued and no new contract was entered into or involved. The old and only insurance contract was simply extended for an additional year by the payment of the premium for the ensuing year as plainly provided in the face of the policy. The original policy was kept in force by automatic renewal upon the payment of premium for the ensuing year; it had not lapsed nor was it subject to cancellation until after ten days' written notice as provided in the very first provision of the policy, *supra*.

The appellee relies heavily on our decision in *Home Mut. Fire Ins. Co. v. Pierce*, 240 Ark. 865, 402 S.W. 2d 672, but the case at bar is clearly distinguishable from the *Pierce* case on the facts. In *Pierce* the insured was engaged in livestock and poultry production conducted on four separate farms. Prior to December 23, 1964, the appellant insurance company had issued a separate policy of insurance on dwellings and other named structures on each of the four farms. In December,

1964, a new five-year policy was written consolidating the coverage as to the four farms and on December 31, 1964, an endorsement was placed on the new policy increasing some of the coverage. The coverage on the equipment in the brooder house was increased from $5,000 to $6,000. Under the new policy a brooder house on one of the farms was insured for $10,000 against loss by fire and, as above stated, the equipment and supplies therein were insured for $6,000. A dwelling house on the same farm was occupied by a tenant who, well-known to the agent writing the insurance, attended to swine production on the farm and had nothing whatever to do with the brooder house operation. Prior to issuing the new policy, the tenant moved from the dwelling house and it remained vacant for more than 30 days before the brooder house and equipment were destroyed by fire on January 12, 1965. The new policy contained a provision reading as follows:

> Unless otherwise provided by agreement in writing added hereto, this Company shall not be liable for loss or damage occurring. . . . (f) while a described building whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of thirty days.

And the endorsement thereon contained an "otherwise provision" reading as follows:

> In consideration of the waiver of additional premium for increased hazard by reason of vacancy or unoccupancy, permission is hereby given for dwelling insured under this policy to become or remain vacant or unoccupied for periods in excess of thirty days, provided that in case any dwelling is damaged or destroyed by fire during such vacancy or unoccupancy in excess of thirty days this company shall not be liable to pay or make good to the insured in excess of two-thirds of the amount of insurance covering such dwelling.

When claim was made for the full loss coverage on the brooder house and equipment, the insurance company contended that it was not liable under the policy for more than two-thirds of the amount of coverage on the brooder house under the above endorsement. The trial court rendered judg-

ment for the full amount of coverage and we affirmed.

The question in *Pierce, supra,* was whether the vacancy endorsement on the separately insured dwelling house extended to coverage on the separately insured brooder house and we agreed with the trial court that it did not. We agree with the appellant in the case at bar, that the sole question before the trial court and before this court on appeal is whether the premium payment of March 24, 1974, constituted a new and separate contract which prevented the application of the 60-day rental period from running under the exclusionary provision. Upon the payment of the renewal premium in the case at bar the policy was automatically renewed under its terms and nothing was added to or taken from the terms of the policy. In other words, it remained the same identical contract without alteration.

The case of *Aetna Ins. Co.* v. *Short,* 124 Ark. 505, 187 S.W. 657 (1916), involved an oral renewal of a fire insurance policy and in that case we said:

> The terms of the policy are neither enlarged, restricted or changed by the renewal but the rights of both parties, no matter how often a policy of insurance may have been renewed, are still bound by the provisions of the policy as originally issued. *Witherell* v. *Maine Insurance Company,* 49 Maine 200; *Aurora Fire & Marine Ins. Co.* v. *Kranich,* 36 Mich. 289; *Hartford Fire Ins. Co.* v. *Walsh,* 54 Ill. 164. Therefore, the court did not err in refusing to instruct the jury that the renewal contract must be established by clear and convincing testimony and that the burden was upon the plaintiff to establish that fact by clear preponderance of the evidence.

In Couch on Insurance 2d, vol. 17, § 68:42, is found the following statement:

> The rule has thus been declared that a renewal of a fire policy by the payment of a new premium and the issuance of a receipt therefor, where there is no provision in the policy for its renewal, is a new contract on the same terms as the old, *but that where the renewal is in pursuance of a provision to that effect it is not a new contract but an*

*extension of the old.* (Italics supplied.)

Citing *Lewis* v. *Western Assur. Co.,* 175 Tenn. 37, 130 S.W. 2d 982.

The *Lewis* case, thus cited, involved fire loss insurance on a dwelling house. Under a Tennessee statute, recovery on a fire insurance policy was limited to the actual value of the loss where inspection of the property was made within 90 days after issuance of the policy. Where such inspection was not made, the policy became a valued policy for the face amount recited in the policy. A dwelling house was involved in *Lewis* and it was insured for a period of one year for $1,000 and no inspection was made. The policy was renewed at the end of the year by the issuance of a new and separate policy containing the same provisions as the first policy. The house was totally destroyed by fire less than two months after the issuance of the renewal policy. The insured claimed the face value of $1,000 and the insurance company resisted because the property had not been inspected and the 90-day period for such inspection had not expired under the renewal policy. The trial court held that the new policy was an extension of the old policy and that the 90-day inspection period ran from the issuance of the first policy. In affirming the trial court the Supreme Court of Tennessee said:

> The renewal a year later, under the express terms of the original policy, had the effect of extending the original contract for another year. The situation was the same as though the policy had been issued originally for two years, in which event defendant, so far as value was concerned, had ninety days from the date of issuance to inspect.

The court then quoted from 27 C.J., page 111, as follows:

> "The renewal receipt is more than a mere receipt for money; it is evidence of a contract. But it is an extension of the original policy, and not a substitute therefor."

The Tennessee Court further quoted from 14 R.C.L., pages 889-890, as follows:

"A renewal of insurance by the payment of a new premium and the issuance of a receipt therefor, there being no provision in the policy for its renewal, is a new contract on the same terms as the old, *but where the renewal is in pursuance of a provision to that effect it* is not a new contract but an extension of the old."

In 44 C.J.S., Insurance, § 285, is found the following:

Where the renewal agreement so recites, or unless it provides otherwise, the terms and conditions of the existing policy are not changed, enlarged, or restricted by a renewal but are merely continued in force as binding on the parties; and an agreement to renew, in the absence of expressions to the contrary, is presumed to contemplate the same terms and conditions as the existing insurance, the only change being the time of its expiration.

In the case of *New York Life Ins. Co.* v. *Campbell,* 191 Ark. 54, 83 S.W. 2d 542, a lapsed policy was reinstated under provision in the policy providing:

This policy may be reinstated at any time within five years after default upon written application by the insured and presentation at the home office of evidence of insurability acceptable to the company, and upon payment of overdue premiums, with six per cent interest thereon from their due date.

The policy involved was issued in 1928; it was reissued with a change of beneficiary on February 4, 1932, and expressly provided that it would take effect as of the 19th day of November, 1928 (the anniversary date of the policy). The policy lapsed for nonpayment of premium on March 19, 1932, and on March 29, 1932, the insured made written application for reinstatement which was granted on March 30, 1932, and the policy was reinstated. The policy contained a two-year incontestable clause. About September 10, 1933, the insured suffered a stroke and so advised the insurance company, who filed a petition in chancery to cancel the policy because its reinstatement was produced by fraud. The insured stated in his application for reinstatement that his

health and physical condition were in the same state as they were when the original policy was issued in 1928, and that he had had no past illness, injury or disease, nor had he been treated by or consulted a physician within two years last past. A doctor testified that he had treated the insured from October 2, 1931, until February 1, 1932, and had diagnosed the appellee's condition as chronic nephritis. In upholding the chancellor's denial of the petition for cancellation, this court said:

> It necessarily follows from what we have said, and the cases cited in support thereof that the reinstatement of the insured by appellant created no new contract between them, but simply revives and reinstates the original contract and all provisions thereof, and subsequently the rights and obligations of the respective parties thereto must be measured thereby.

See: *Munn* v. *Robinson*, 92 F. Supp. 60, affirmed in *John Hancock Mut. Life Ins. Co. of Mass.* v. *Munn*, 188 F. 2d 1; see also *New York Life Ins. Co.* v. *Dandridge*, 202 Ark. 112, 149 S.W. 2d 45, 134 A.L.R. 1519.

In *Life & Cas. Ins. Co. of Tenn.* v. *McCray*, 187 Ark. 49, 58 S.W. 2d 199, a life insurance policy was involved which contained a provision against suicide as follows:

> If, within one year from the date of issue of this policy, the insured shall, whether sane or insane, die by his own hand, the liability of the company shall be limited to the amount of the premiums paid hereon.

The policy also contained a provision for reinstatement after lapse by the payment of premiums and production of evidence of insurability satisfactory to the company. The premium on May 1, 1931, was not paid when due nor within the period of grace, but on August 1, 1931, the policy was reinstated. Thereafter, on May 10, 1932, more than one year from the date of the policy, but less than one year from the date of reinstatement, the insured committed suicide. In the suit on the policy the insurance company contended that the one year suicide clause ran from the date of the reinstatement of the policy and not from the date of the policy itself. In affir-

ming the trial court this court said:

> We do not understand there was ever but one policy, and it bore date of November 3, 1930. Certainly there was never but one policy issued by appellant to insured. It lapsed and became void after 30 days, from May 1, 1931, until August 1, 1931, during which time there was no insurance, but on the latter date the very same policy, not a new or different one, was reinstated by the payment of all delinquent premiums and furnishing evidence of insurability satisfactory to appellant. There is no room for the contention that any new or different contract or policy was in force after reinstatement.

The policy involved in the case at bar, by its plain and unambiguous terms, provided for automatic renewal for an additional year upon payment of the premium for the ensuing year. We are forced to the conclusion that the renewal here involved was not a new contract and the trial court erred in instruction to the jury that it was.

The judgment is reversed and the cause dismissed.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and FOGLEMAN, JJ.