**HUTCHINGS v. LANDO et al.**

District Court, S. D. New York.
Oct. 22, 1947.

Kurt Widder, of New York City, for plaintiff.

Bandler, Brady & Haas, of New York City (Julius Kass and Harry Merwin, both of New York City, of counsel), for defendants.

LEIBELL, District Judge.

The defendants move (1) to dismiss the action under Rule 12(c), Federal Rules of Civil Procedure, upon the ground that the complaint fails to state a claim upon which relief can be granted; and (2) for summary judgment under Rule 56, F.R.C.P.

It is defendants' contention that plaintiff, their former employee, was not engaged in "interstate commerce" or "in the production of goods for [interstate] commerce" under the Fair Labor Standards Act. Tit. 29 U.S.C.A. § 207.

The complaint, filed August 18, 1947, pleads two claims for unpaid overtime compensation: one for the period of July 12, 1944, to December 5, 1945; and the other for the period of December 6, 1945, to August 16, 1947. Tit. 29 U.S.C.A. §§ 207 and 216(b).

The gravamen of the first cause of action is set forth in paragraphs 2, 3 and 4 of the complaint as follows:

"2. At all times hereinafter mentioned defendant Max Lando was doing business under the assumed name of New York News Co. in the City of Hudson, New York, and was engaged in interstate commerce and in the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act in that he sold and distributed to retail dealers newspapers, magazines, and other publications and periodicals throughout Columbia County in New York State, which newspapers, magazines, publications, and periodicals were published outside of New York State.

"3. Between July 12, 1944 and December 5, 1945 plaintiff was employed by defendant, Max Lando, to receive, check, sort, bundle, distribute, and deliver said newspapers, magazines, publications, and periodicals,

to make collections, take orders, and keep accounts of the sales, deliveries, and distributions made by said defendant. Plaintiff duly performed said services, all of which were in furtherance of interstate commerce.

"4. At all of the times herein mentioned defendant, Max Lando, employed plaintiff in interstate commerce as aforesaid for work weeks longer than 40 hours per week, and failed and refused to compensate him for such employment in excess of 40 hours per week at rates not less than one and one-half times the rate at which he was employed. Such employment without additional compensation was a violation of said Fair Labor Standards Act."

There are similar allegations in the second cause of action (for the later period) in paragraphs 8, 9 and 10.

The defendants filed an answer denying most of the allegations of each claim, except that during the afore-mentioned period—" * * * defendant Max Lando was doing business as 'New York News Co.' in the City of Hudson, State of New York, as a wholesale distributor of newspapers, magazines and other publications and periodicals to retail newsdealers throughout Columbia County in the State of New York; that upon information and belief less than 10% of said newspapers and other publications were published outside of the State of New York; that between said dates, plaintiff was employed by defendant to receive, check, sort, bundle, distribute and deliver said newspapers, magazines and other publications and periodicals to retail newsdealers throughout Columbia County in the State of New York, and to make collections, take orders and keep accounts of said sales, deliveries and distributions."

As a special defense the defendant asserts the alleged failure of the complaint to state a claim on which relief can be granted.

■ ■ The character of plaintiff's services was such that he was not engaged in the production of goods for interstate commerce. The magazines and newspapers had already been "produced." He was en-

gaged in their distribution to the retailer, after their receipt by the defendant from the publisher.

A newspaper publisher who shipped only one-half a per cent. of his issue to subscribers outside the State was held to be engaged in the production of goods for commerce. Mabee v. White Plains Pub. Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607. The application of the Fair Labor Standards Act to the publisher's employees was said to be dependent on the character of their work. Of course, the plaintiff here was not an employee of the publisher. He was an employee of a distributor or wholesaler.

Plaintiff's affidavit describes his duties as follows:

"Defendants sold the products of all of these publishers. This now makes a total of thirteen book and magazine publishers, eight of whom send their products to defendants from outside the state. When we consider that many of these publishers sell several items, the actual number of items shipped in interstate commerce is increased considerably.

"The procedure by which these publications were handled by defendants was as follows: some were delivered at the railroad station which I picked them up and brought them to defendants' place of business, while others were delivered directly to the place of business. There I checked, sorted and bundled them for further delivery to defendants' customers—the retail dealers who sold directly to the consumer. The publications were kept at defendants' place of business only long enough to check and prepare them for such further delivery."

Defendant's affidavit describes defendants' business as follows:

"2. My business is confined to Columbia County in the State of New York, and my franchise from the publishers restrict me to that county exclusively. My father, MAX LANDO, operated under similar restrictive franchises."

"3. My place of business is a store approximately 50 by 25 feet. I have about 75 retail newspaper accounts, all of which are

in Columbia County, State of New York. Thirty-five (35) of these retail accounts also buy magazines and other periodicals from me. All but one of the ten (10) newspapers which I distribute to my retail accounts are published in New York State. Well over 90% of the magazines and other periodicals which I distribute are also published in New York State."

"6. The newspapers are shipped to me at Hudson, New York, by train and by truck. The shipments by truck consist of the advance parts of the various New York metropolitan Sunday papers. The shipments by train include all of the listed New York Daily newspapers. Upon their arrival at Hudson, New York, they are picked up by my delivery wagons (of which I have two) at the New York Central Railroad Station and delivered to my store, where they are checked and sorted, and from which place they are then redistributed from my delivery wagons to my customers throughout Columbia County in the State of New York. Magazines and other periodicals are sent directly to my store, either by express, parcel post or freight, from which point they are checked, sorted and redistributed from my delivery wagons to my customers throughout Columbia County in the State of New York."

"9. The plaintiff's duties were to make deliveries to 35 of my retail accounts throughout Columbia County. This required him to receive the newspapers at the station, to take them to my store, there with the help of other employees to check, sort, bundle, load and distribute and deliver the newspapers and magazines to my accounts. In the discharge of his duties, plaintiff was also required to keep accounts of his deliveries and collections."

If the defendants merely furnish the distribution facilities by which for part of the journey the magazines are transported from the publishers to the retailers, the defendants would be engaged in the movement of interstate commerce, and plaintiff's part therein would be covered by the Act.

Assuming the defendants were the actual purchasers of magazines from an out of state publisher in the first instance, the result might be the same, if certain other factual situations were present.

"The fact that respondent may treat the goods as stock in trade or the circumstance that title to the goods passes to respondent on the intermediate delivery does not mean that the interstate journey ends at the warehouse. The contract or understanding pursuant to which goods are ordered, like a special order, indicates where it was intended that the interstate movement should terminate. Numerous authorities are pressed on us for the contrary view and for the conclusion that when the goods enter the warehouse, they are no longer 'in commerce'. But as we stated in Kirschbaum Co. v. Walling, 316 U.S. 517, 520, 521, 62 S.Ct. 1116, 1118, 1119, 86 L.Ed. 1638, decisions dealing with various assertions of state or federal power in the commerce field are not particularly helpful in determining the reach of this Act." Walling v. Jacksonville Paper Co., 317 U.S. 564, at page 569, 63 S.Ct. 332, 336, 87 L.Ed. 460.

"The fact that all of respondent's business is not shown to have an interstate character is not important. The applicability of the Act is dependent on the character of the employees' work. Kirschbaum Co. v. Walling, supra, 316 U.S. [at] page 524, 62 S.Ct. [1116] 1120, 86 L.Ed. 1638. If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act." Walling v. Jacksonville Paper Co., 317 U.S. 564, at pages 571, 572, 63 S.Ct. 332, 337, 87 L.Ed. 460.

See also Walling v. Mutual Wholesale Food & Supply Co., D.C., 46 F.Supp. 939.

Employees of a wholesale distributor of newpapers were held by the Administrator of the Fair Labor Standards Act to be covered by the Act in a ruling on October 17, 1941. Certain sections of the Sunday edition of a newspaper were shipped to Atlanta from outside the State of Georgia. The employees of an Atlanta distributor were held to be within the general coverage of the Act, as employees engaged in interstate commerce.

Schroepfer v. A. S. Abell Co., 4 Cir., 138 F.2d 111, 113, is not in point. There the employee was engaged in the distribution of the "Baltimore Sun" within the City of Baltimore where the newspaper was published. The Circuit Court of Appeals, Fourth Circuit, held that an employee so engaged is "certainly not 'actually engaged in' interstate commerce, nor is he 'so closely related to the movement of the commerce as to be a part of it' ". In the case at bar many of the magazines were printed outside the State of New York and so were several of the newspapers.

Judgment on the pleadings under Rule 12(c), F.R.C.P., should not be granted unless all the essential facts are fully pleaded and the merits can be determined in that manner and the right thereto is clear. Geist v. Prudential Ins. Co., D.C., 35 F.Supp. 790.

I am not satisfied that on the record now before me I have a complete and detailed picture of defendant's business. The case should be tried and the factual situation fully explored. Just what are the terms of the defendant's contract with the American News Co.? To what extent are the defendants distributing agents for publishers, making deliveries to customers of the publishers? Who is the purchaser from the publisher? Are any of the out of state purchases made by defendants for specific customers? Walling v. Jacksonville Paper Co., 317 U.S. 564, at page 568, 569, 63 S.Ct. 332, 87 L.Ed. 460; McLeod v. Threlkeld, 319 U.S. 491, at page 494, 63 S.Ct. 1248, 87 L.Ed. 1538. The trend of decisions of Circuit Court of Appeals, Second Circuit, favors the trial of basic issues of fact as opposed to trial by affidavit. Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, at page 135; Arnstein v. Porter, 2 Cir., 154 F.2d 464, at page 470, and dissenting opinion of Judge Learned Hand in California Apparel Creators v. Wieder, 2 Cir., 162 F.2d 893, at page 902. Witnesses should be examined and a full record made of the facts, which are most important on the question of coverage in a suit under the Fair Labor Standards Act. That should be done in this case.

Defendants' motion is accordingly denied. Settle order.