**MUNN v. ROBISON et al.**

**ROBISON v. JOHN HANCOCK MUT. LIFE INS. CO.**
Civ. Nos. 499, 506.

United States District Court
W. D. Arkansas, El Dorado Division.
July 24, 1950.

Abbott & Abbott, El Dorado, Ark., for E. J. Munn.

Surrey E. Gilliam, El Dorado, Ark., W. R. McHaney, Smackover, Ark., for Mrs. Ora V. Robison.

William M. Clark, of House, Moses & Holmes, Little Rock, Ark., for John Hancock Mut. Life Ins. Co.

MILLER, District Judge.

A comprehensive recapitulation of the pleadings in this case would unduly prolong this opinion, and the court feels that the following brief statement will suffice to present the questions for determination.

Civil No. 499 was originally filed in the Union Chancery Court to recover judgment for the amount of an alleged loan to H. P. Robison, deceased; to foreclose a mortgage given as security for the loan; and to reach the proceeds of a life insurance policy in the sum of $6,000.00 issued by John Hancock Mutual Life Insurance Company (hereinafter referred to as John Hancock) on the life of the said H. P. Robison and allegedly assigned to the plaintiff Munn as security for the loan. Writ of garnishment was issued against John Hancock, which company subsequently removed the case to this court on the ground of a separate and independent claim. Thereafter John Hancock filed its answer, counterclaim and cross claim, denying liability on the allegedly assigned policy for $6,000.00 and another policy in the sum of $1,000.00 issued by it upon the life of the said Robison on the ground that said policies had lapsed for non-payment of premiums and, because of fraud in the applications for reinstatement, were never effectively reinstated; tendering into court certain premium payments; and praying that should the court determine that the policies were in force at the death of the said Robison that plaintiff Munn and defendant Mrs. Ora V. Robison be required to interplead and settle between themselves their rights to any moneys due. The interpleader was directed at both policies issued by John Hancock, Policy No. 4483188, issued May 7, 1947, in the face amount of $6,000.00, and Policy No. 4492471, issued June 4, 1947, in the face amount of $1,-000.00. By her answer and counterclaim Mrs. Ora V. Robison admits that she is a citizen of Louisiana (the pleading says "resident", but by virtue of discussions with the attorneys the court is certain that "citizen" was intended and is acting herein accordingly), and since more than $500.00 is involved the interpleader properly falls under Section 1335 of Title 28 U.S.C.A., giving the court jurisdiction to adjudicate the respective rights of the parties to both policies.

Upon motion of the plaintiff, E. J. Munn, all issues of the case other than those raised by the interpleader proceeding were remanded to the State court, and in the event it should be determined that John Hancock is liable on Policy No. 4483188, the final determination of the rights of Munn and Mrs. Robison to the proceeds thereof will be withheld pending a decision by the State court as to the validity of the claim of Munn against Mrs. Robison, and if valid, the amount of the policy proceeds necessary to satisfy that debt after the proceeds of the foreclosure sale are applied thereto. Munn has withdrawn any claim to the proceeds of Policy No. 4492471, with the result that in the event her motions are sustained, Mrs. Robison will be entitled to the entire proceeds of that policy.

Civil No. 506, a suit by Mrs. Robison against John Hancock to recover the proceeds of Policy No. 4483188, the policy for $6,000.00, was filed in the Union County

Circuit Court and removed here on diversity and jurisdictional amount. The identical issues are raised by John Hancock in its counterclaim for interpleader filed therein as to Policy No. 4483188 are are raised as to both policies by the interpleader in Civil No. 499, and by order of the Court said Civil Nos. 499 and 506 have been consolidated for trial.

There is now pending for determination by the court a motion by Mrs. Robison for judgment on the pleadings under Rule 12 (c), or for summary judgment under Rule 56(a), Fed.Rules Civ.Proc., 28 U.S.C.A., it being the contention of Mrs. Robison that under the undisputed facts set forth in the pleadings, John Hancock is liable on both policies as a matter of law. Specifically, her contention is that since two years have elapsed from the issue date of both policies, John Hancock is barred by the incontestable clause in each policy from asserting the only defense made in the pleadings, that of fraud in the applications for reinstatement.

Both policies contain the following provision:

"This policy, except any supplementary provision hereof granting any benefit for total and permanent disability, or granting any additional insurance specifically against death caused by certain bodily injuries sustained through accidental means, shall be incontestable after it has been in force during the lifetime of the insured for two years from its date of issue, except for non-payment of premium, and except that if the insured's age has been misstated the amount payable hereunder shall be that which the premium paid would have purchased at the correct age."

Due to certain factual differences in the execution of the two policies which bear on the question of the governing substantive law, Policy No. 4492471 will be discussed first. That policy provides:

"At any time after default in payment of premium (unless the cash surrender value has been paid, or the term of any extended insurance has expired), this policy may be reinstated upon production of evidence of insurability satisfactory to the Company, and upon payment or reinstatement of any indebtedness to the Company hereon and payment of arrears of premiums, with interest at the rate of five per cent per annum."

Policy No. 4492471 was issued June 4, 1947; lapsed for non-payment of premiums September 4, 1948; application for reinstatement was made on October 30, 1948, and approved November 5, 1948; lapsed for non-payment of premiums on December 4, 1948; application for reinstatement made on January 13, 1949, and approved January 20, 1949; and premiums paid from then until death of insured, H. P. Robison, on October 5, 1949.

In each application for reinstatement the insured represented that he was in sound health and since the first premium in default became due had no injury, ailment, etc., and had not consulted a physician. The application provided that reinstatement would not be effective until approved by the defendant at its home office in Boston, Massachusetts, and provided "the terms and conditions of the incontestable provision in said policy shall apply to a reinstatement thereof made upon this application, but the period of time specified in said provision shall run from the effective date of the reinstatement endorsed hereon."

Preliminary to a determination of the rights of the parties under this insurance contract, it is necessary to ascertain the governing substantive law. The question whether the substantive law of Arkansas or the substantive law of Massachusetts applies is raised by the contentions of the parties. Jurisdiction of the court is based upon diversity and the requisite amount, and, therefore, the conflict of laws rule of the State of Arkansas will be followed.

An examination of the Arkansas decisions reveals that the substantive law of the place of making is applied in determining rights under insurance contracts. Massachusetts Protective Association v. Oden, 186 Ark. 844, 56 S.W.2d 425; Leflar, Conflict of Laws, Arkansas, Section 103, and cases cited therein. And, an insurance contract is made at the place where the last act necessary to the completion of the contract is done. In the instant case, the acts

necessary to a completion of the contract are set forth in the application:

" * * * If payment of the said premium was not made when this application was signed, any such policy will take effect as of the date of issue, and only if the proposed insured has not consulted or been treated by a physician or other practitioner since the date of the completion of said Part B, and *only if the policy is delivered to and received by the applicant and the first premium or instalment thereof is actually paid while the proposed insured is alive and in sound health, and in any case, such delivery and payment shall constitute an acceptance of the policy* and of all its conditions." (Emphasis added.)

 The pleadings reveal that the policy was mailed by John Hancock to its resident agent at Smackover, Arkansas, who delivered the policy to the insured, H. P. Robison, and accepted the first premium paid by Robison at the time of delivery. Thus, the contract was made in Arkansas, and the Arkansas substantive law is applicable in determining the rights of the parties.

John Hancock contends that regardless of where the original contract was made, it lapsed, and but for the reinstatement unquestionably would be void and of no effect, and, therefore, the claim of Mrs. Robison depends upon the effect of the reinstatement, which, by the terms of the application for reinstatement, was not effective until approved by John Hancock in Massachusetts. The substance of this contention is that the last act necessary to the completion of a valid and enforceable contract, the approval of the application for reinstatement, took place in Massachusetts, with the result that the substantive law of Massachusetts is determinative of the rights of the parties under the insurance contract.

 Among the provisions of the policy is one giving the insured the absolute right, under the facts of this case, to reinstate. John Hancock accepted and approved each application for reinstatement, which, under the Arkansas law, is conclusive that the condition "production of evidence of insurability satisfactory to the Company" was satisfied. Thus, while the

policy may have lapsed for non-payment of premiums, it was, by virtue of this provision, not a "dead" contract, because the reinstatement was made under a then existing right of the insured conferred thereby rather than a gratuitous privilege conferred by John Hancock. And, it is settled beyond dispute in Arkansas that "the reinstated policy is not a new contract, but is the same old policy." N. Y. Life Ins. Co. v. Dandridge, 202 Ark. 112, 149 S.W.2d 45, 48, 134 A.L.R. 1519. As expressed in N. Y. Life Ins. Co. v. Campbell, 191 Ark. 54, 57 83 S.W.2d 542, 544:

"It necessarily follows from what we have said and the cases cited in support thereof that the reinstatement of the insured by appellant created no new contract between them, but simply revives and reinstates the original contract and all provisions thereof and subsequently the rights and obligations of the respective parties thereto must be measured thereby."

See, also: Life & Casualty Ins. Co. of Tennessee v. McCray, 187 Ark. 49, 51, 58 S.W.2d 199.

 The scope, effect and construction of the reinstatement provision is determined by the law of Arkansas regardless of where the last act necessary to the completion of the reinstatement took place, because the reinstatement provision is a part of the original contract made in Arkansas. This question has been definitely concluded by the Arkansas decisions, and there is nothing in the language of this contract rendering these decisions inapplicable, and the insurer may not impose obligations in the application for reinstatement not contained in the policy. N. Y. Life Ins. Co. v. Adams, 151 Ark. 123, 235 S.W. 412; Security Life Ins. Co. v. Leeper, 171 Ark. 77, 79, 284 S.W. 12.

 The substantive law of Arkansas became applicable to this contract when it was made; the reinstatements were made under and by virtue of that contract; the reinstatements were of "the same old contract" and a new one was not created; and there is no reason for this court to suppose that because the application for reinstatement was approved in Massachusetts,

the Arkansas Supreme Court would say that the substantive law of Arkansas relinquished its hold over the rights of the parties under the contract in favor of the substantive law of Massachusetts. A reading and study of the Arkansas decisions compels the court to conclude that the contrary is true. Therefore, this contention of John Hancock is rejected.

Proceeding now to a consideration of the terms of the incontestable clause, is John Hancock barred from asserting the defense of fraud in the application for reinstatement?

The court agrees with John Hancock that it must give effect to the contract of insurance as entered into by the parties, and in so doing reach a conclusion as nearly as possible in conformity with the intention of the parties. Importers' and Exporters' Ins. Co. v. Jones, 166 Ark. 370, 375, 266 S.W. 286, 288. It cannot rewrite the contract. However, it is a familiar canon of construction that ambiguous or doubtful language in insurance contracts must be interpreted most unfavorably to the party framing the contract, or, as sometimes stated, "the strongest interpretation against the insurer which it will reasonably bear." Importers' and Exporters' Ins. Co. v. Jones, supra.

The parties contracted that "this policy * * * shall be incontestable after it has been in force during the lifetime of the insured for two years from its date of issue, * * *." In construing similar provisions, usually reading "incontestable after two years from date of issue", the Arkansas Supreme Court has repeatedly held that the incontestable clause runs from the date of issue of the policy and when the policy lapses and is reinstated the incontestable clause is likewise revived. N. Y. Life Ins. Co. v. Dandridge, supra, and cases cited therein. Thus, in Life & Cas. Ins. Co. of Tennessee v. McCray, supra, the court, in holding that a suicide clause ran from the date of the policy rather than from the date of reinstatement, said:

"Appellant says: 'If the clause began to run from the date of the original policy, the judgment of the lower court was correct.' We do not understand there was ever but one policy and it bore date of November 3, 1930. Certainly there was never but one policy issued by appellant to insured. It lapsed and became void after 30 days from May 1, 1931, until August 1, 1931, during which time there was no insurance, but on the latter date the very same policy, not a new or different one, was reinstated by the payment of all delinquent premiums and furnishing evidence of insurability satisfactory to appellant. There is no room for the contention that any new or different contract or policy was in force after reinstatement. By agreement between the parties a forfeiture of the policy was set aside and the same contract was reinstated. No new policy was issued and none contemplated. By the express terms of the policy it is provided that: 'If within one year from the date of issue of this policy, the insured shall * * * die by his own hand the liability of the company shall be limited to the amount of the premiums paid hereon.' It does not provide that the company's liability shall be thus limited if the insured shall die by his own hand within one year from the date of reinstatement, should the policy lapse. Time is to be reckoned 'from the date of issue of this policy,' not from the date of reinstatement, nor from the date of any other policy. No doubt appellant could have so worded its policy, but it has not seen fit to do so. We see no ambiguity in the matter, but if there were, under the settled rule of this court, we would be bound to construe the clause most strongly against appellant."

In N. Y. Life Ins. Co. v. Dandridge, supra, the court said:

"Most of the courts, holding a contrary view to ours, seem to base their reasons on the idea that reinstatement creates a new contract and that the incontestable clause, although barred by lapse of time, is revived and becomes available to contest a reinstated policy for fraud. Our idea is that to so hold, something must be read into the policy that is not there, but might have well been there, had the Company so desired. Such a holding changes the incontestable clause to read that 'this policy shall be in-

contestable after two years from its date of issue or after the date of any reinstatement thereof.' It is well settled that courts do not, or should not, make contracts for the parties, and that the contract as written will be most strongly construed against the party writing it."

While it appears from the facts of some of the Arkansas cases that the two year period of the incontestable clause expired after reinstatement, it has been specifically decided that this fact is immaterial, the test being whether the two year period has expired from the date of issue. As stated in N. Y. Life Ins. Co. v. Dandridge, supra:

"But, learned counsel for appellant say that this Hamilton case is not in point and should be distinguished by the fact that the insured died more than two years from the date of reinstatement, whereas in the Campbell case and in the case at bar, the claim arose within two years from the date of reinstatement. Even so, can any one doubt, from a reading of that opinion that this fact made the slightest difference in the result reached? We think not."

John Hancock would distinguish these decisions on the wording of the policies involved, pointing out that this policy provides "in force * * * for two years from its date of issue", rather than simply "after two years from its date of issue". The Arkansas Supreme Court, on a different point, has recognized such a distinction. In American National Insurance Co. v. Stutchman, 208 Ark. 1023, 185 S.W.2d 284, the court held that the language of the particular policy, "in force", governed and fixed the status of the parties as of the date of the death of the insured. Thus, since the insured died before the period of time of the incontestable clause had elapsed, the Insurance Company was not precluded from bringing suit for cancellation after the period had expired. If the language of the instant policy be given the same construction, it would result in the rights of the parties being fixed as of the date of the death of the insured rather than the date of the suit. Obviously, the policy could not have been in force during the lifetime of the insured for two years from the date of

its issue if the insured died within two years of the date of issue. In this case the facts reveal that the insured did not die within two years of the date of issue.

And, in Mutual Benefit Health & Accident Ass'n v. Moore, 196 Ark. 667, 119 S.W.2d 499, 502, the Arkansas Supreme Court held under the wording of the policy involved, that certain coverage existed only if the policy had been in *continuous force* for the six preceding months, and where under the facts the policy lapsed before it had been in continuous force for six months with subsequent reinstatement and claim made prior to the expiration of six months after reinstatement, that "until the policy of insurance had been continually in force for a period of six months the insured was not entitled to and did not have insurance against heart disease and tuberculosis." Obviously, the provision for "continuous force" was controlling, and it is difficult to see how the court could have reached any other conclusion without a strained construction of the clear wording of the policy. This policy does not say "continuously in force for two years."

The court is of the opinion that the difference in language is immaterial and that the attempted distinction is not sound. With each reinstatement all back premiums were paid and in each instance the "same old policy" was reinstated, and at the death of the insured, this policy had been in force for two years from its date of issue. To give the effect to this language contended for by John Hancock, the court would have to read "continuously" into the incontestable clause, or a provision that in the case of reinstatement, the period would run anew for two years, and this the court cannot do. And, in holding that the incontestable clause, under the undisputed facts in this case, runs from the date of the issue of the policy, the court is giving effect to the intention of the parties as it appears from the plain wording of the policy provision.

The fact that the application for reinstatement provided that the incontestable clause would run anew from reinstatement is immaterial, for under the Arkansas decisions such a provision is invalid and of

no effect as being an attempted enlargement of the terms upon which reinstatement could be obtained. Security Life Insurance Co. v. Leeper, supra. Neither is the inclusion of this provision in the application persuasive that the parties in the original contract intended that the incontestable clause should run anew from reinstatement. The application form was prepared by the Insurance Company, and did not result from mutual negotiation. Under such circumstances particular provisions cannot be singled out as indicative of the true intention of the parties in another instrument, and since under the terms of the original policy and the Arkansas decisions this particular provision is ineffectual, it is disregarded by the court as having no bearing on the true intention of the parties. As stated above, that intention is clear enough from the wording of the policy, but if the policy language be considered ambiguous, it must be construed in favor of the claimant and against the Insurance Company.

It should be noted in passing that the "moral arguments", however meritorious they might be in a case of first impression, have been conclusively rejected by the Arkansas Supreme Court. In N. Y. Life Ins. Co. v. Campbell, supra, the court said:

"The contention is urged that such construction of the contract of insurance permits the insured to effect reinstatement by fraud and deceit. Even so, the insurer had a fair opportunity to make such investigation in reference to the truthfulness of the answers contained in the application for reinstatement prior to the reinstatement as it saw fit, and when it accepted the insured's statements in reference to his health and physical condition and the policy was reinstated by the insurer, the door was forever closed to future investigation." [191 Ark. 54, 83 S.W.2d 544.]

Turning to a consideration of the $6,000.00 policy, No. 4483188, the conflict of laws question must be resolved first. If it is determined that the law of Arkansas governs, then the same result as to liability of John Hancock will be reached as on Policy No. 4492471. It is earnestly contended by John Hancock that this policy, unlike Policy No.

4492471, was made in Massachusetts in the first instance, and for that reason as well as the fact that the applications for reinstatement were approved in that state the substantive law of Massachusetts governs. This contention is based upon the assertion that the last act necessary to the completion of the contract took place in Massachusetts. In this regard the application for the policy states:

"B. If the first premium or instalment thereof above stated was paid when this application was signed, and if the Company is satisfied that on the date of the completion of Part B of this application the proposed insured was insurable in accordance with the Company's rules for the amount and on the plan applied for without modification, and if this application, including said Part B, is, prior to the proposed insured's death, approved by the Company at its Home Office, the insurance applied for shall be in force as of the date of completion of said Part B."

It appears from the pleadings that application for Policy No. 4483188 was made on May 7, 1947, and delivered to the resident agent of John Hancock at Smackover, Arkansas, together with semi-annual premium; that said application provided, Part A, 16 (b): "Is the right to change the beneficiary from time to time reserved to the applicant? Yes"; that Policy No. 4483188 was issued as of May 7, 1947, mailed to the resident agent of John Hancock at Smackover, Arkansas, who delivered the same to the applicant; that the policy lapsed for nonpayment of premiums on May 7, 1948; that application for reinstatement was made on June 23, 1948, and approved on July 7, 1948; that the policy again lapsed on November 7, 1948; that application for reinstatement was made on December 21, 1948, and approved December 27, 1948; that the policy again lapsed on February 7, 1949; that application for reinstatement was made March 12, 1949, and approved March 18, 1949; and all premiums were paid at the time of the death of the insured, H. P. Robison on October 5, 1949.

It is conceded by Mrs. Robison that if the policy issued conformed in all material

respects to the application, under the provisions of the application and the undisputed facts, the last act necessary for the completion of the contract took place in Massachusetts, and it is not strenuously argued that the substantive law of Massachusetts does not allow an Insurance Company to assert the defense of fraud in the application for reinstatement within the period of the incontestable clause after reinstatement. However, it is Mrs. Robison's contention that the policy did not conform to the application and was in fact a counter offer which required acceptance by the applicant in Arkansas prior to the completion of a binding contract.

The application was for a policy in which the right to change the beneficiary from time to time was reserved by the applicant. John Hancock disregraded this part of the application and wrote a policy and sent it to its agent for delivery to the applicant in which the right to change the beneficiary was entirely deleted. If the policy issued varied materially from the application, it became a counter offer which required acceptance by the applicant before a binding contract came into existence. This rule is expressed in Leflar, Conflict of Laws, Arkansas, Sec. 103, as follows:

"If the policy mailed back, however, materially changes the terms set out in the application, it is a counter offer, and the contract is made only when and where it is in turn accepted by the original applicant."

See, Massachusetts Protective Ass'n v. Oden, supra.

Unquestionably, the right to change the beneficiary is a valuable right. If it is not reserved the first named beneficiary acquires a vested interest which cannot be defeated without his consent. This universal rule is stated by the Arkansas Supreme Court in Crenshaw v. Crenshaw, 203 Ark. 1086, 1089, 160 S.W.2d 37, quoting from 29 Am.Jur., Insurance, Sec. 1275, p. 950, as follows:

" 'In practically every jurisdiction it is the rule that in an ordinary life insurance policy which is made payable to the beneficiary and does not authorize a change of beneficiary, the named beneficiary has an absolute vested interest in the policy from the date of its issuance, delivery and acceptance of which he cannot be divested without his consent.' "

See, also: Scales v. The Union Central Life Insurance Co., 200 Ark. 869, 141 S.W. 2d 547; Dinwiddie v. Metropolitan Life Insurance Co., 204 Ark. 677, 163 S.W.2d 525.

John Hancock has alleged that the policy is the standard policy issued upon applications where the beneficiary is a business entity as distinguished from an individual, and since it appeared from the application that Home Ice Company was applicant and beneficiary, and, therefore, was to be the absolute owner of the policy, the words deleted from the policy were not applicable and for that reason were stricken. However, assuming this to be true, the fact remains that the policy was not issued as applied for, since the right to change the beneficiary was asked for in the application and that right was not reserved in the policy. It required an absolute assignment, on a company form, when Home Ice Company transferred the policy to the insured, H. P. Robison. This assignment was dated December 10, 1947, and was received and filed at the home office of John Hancock on December 26, 1947. Thereafter, the insured, H. P. Robison, designated his wife, Mrs. Ora V. Robison, if living, otherwise his daughter, Peggy J. Robison, as "revocable beneficiary". An endorsement to this effect appears on the policy dated December 26, 1947.

The court is of the opinion that it need not determine, in order to dispose of the question now before it, all of the legal results that might have followed the action of John Hancock in delivering the policy in the form issued. It may be that it is customary for John Hancock to delete the right to change beneficiaries when the applicant is a business entity and is also the beneficiary, but regardless of what prompted John Hancock to issue the policy in this manner, the fact remains that it did so, and it, of course, is charged with the legal consequences of its deliberate acts. It was at least highly questionable from a legal stand-

point whether the rights of the parties to the contract, and for that matter others who acquired rights thereunder, were the same as they would have been had the policy been issued as applied for. The court, recognizing the difficulty of definitely stating as a general proposition what are material changes and what are not, is satisfied, however, that under the undisputed facts presented by this record the policy issued did materially deviate from the policy applied for. Since this was a material change the proferred policy became a counter offer, and the last act necessary to the completion of the insurance contract was the acceptance of the policy by the applicant in Arkansas after the delivery by the agent of John Hancock. Therefore, the contract was made in Arkansas, and the substantive law of Arkansas governs.

■ The fact that the insured, H. P. Robison, was subsequently permitted to name a revocable beneficiary even though that right was not permitted by the terms of the policy is in itself immaterial to the determination of where the insurance contract was made in the first instance. In making this determination, it is the duty of the court to view the facts as they existed at that time, and as previously pointed out, the policy did not include the applied for right to change beneficiaries. Furthermore, the subsequent designation of Mrs. Robison as "revocable beneficiary" did not have the effect of substituting the law of Massachusetts for that of Arkansas. Aetna Life Ins. Co. v. Dunken, Administratrix, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342; Griffin v. McCoach, 5 Cir., 116 F.2d 261; 44 C.J.S., Insurance, § 52b, p. 514. This was a mere change in the form of the contract in accordance with the right requested in the original application.

In accordance with the previous discussion under Policy No. 4492471, there is no merit in John Hancock's contention as to the effect of the applications for reinstatement, which became effective upon approval by it in Massachusetts.

· The application of the substantive law of Arkansas to the undisputed facts concerning Policy No. 4483188 requires the same result as that reached on Policy No. 4492471, that John Hancock is barred by the incontestable clause from asserting the defense of fraud in the applications for reinstatement, which is the only defense asserted.

■ Mrs. Robison's motion is for judgment on the pleadings under Rule 12(c), or for summary judgment under Rule 56. The office of both motions is for practical purposes the same. Often both are applicable, but if it is necessary to consider matters outside the pleadings, the motion for judgment on the pleadings is to be treated as a motion for summary judgment. Neither can be granted if there is any genuine issue as to any material fact. Carlander v. Dubuque Fire & Marine Ins. Co., D.C.W.D. Ark., 87 F.Supp. 65, 66, and cases cited therein. In the instant case, there is no genuine issue as to any material fact necessary for a decision on the motion.

The plaintiff in Civil No. 499, E. J. Munn, has filed an amendment to his complaint in which he alleges that he is entitled to recover a proportionate part of any attorney's fee that may be allowed in connection with the $6,000.00 policy involved herein. In the same amendment he specifically disclaims any interest to any proportionate part of any attorney's fee that may be allowed on the $1,000.00 policy.

Mrs. Ora V. Robison has filed an answer to the amendment in which she denies that the plaintiff Munn is entitled to any attorney's fee that may be allowed. The plaintiff Munn relies upon the case of Huddleston v. Home Life Insurance Co. of New York, 182 Ark. 1036, 34 S.W.2d 221. The facts in that case are entirely different from the facts here, and the court does not think that decision supports the claim of the plaintiff Munn. In the Huddleston case, supra, the assignee filed the suit directly against the Insurance Company and the beneficiary of the policy intervened against the Insurance Company. When the claim was established by the judgment of the court, then the assignee and the intervenor, the beneficiary, disagreed as to the division of the attorney's fee that had been allowed by the court against the Insurance Company. The

court divided the fee between the attorneys for the assignee and the intervenor on the ground that they had jointly prosecuted the suit against the Insurance Company.

Here the plaintiff Munn's asserted claim is for a writ of garnishment against John Hancock and that on a final hearing he have judgment against John Hancock for a sum sufficient to pay the remainder of his debt after the application of the proceeds from the sale of certain mortgaged property had been made to any judgment that might be recovered by him against Mrs. Ora V. Robison and the estate of H. P. Robison, deceased. Thus, his claim against John Hancock is dependent upon the obtaining of a judgment against Mrs. Robison for a debt of her deceased husband, and upon the liability of John Hancock to Mrs. Robison as beneficiary of the policy involved. .

Subsequent to the removal of the action by John Hancock the plaintiff Munn filed a motion to dismiss and to remand the case to the Union Chancery Court. He specifically asked to be allowed to dismiss his cause of action against John Hancock "based on an assignment of a life insurance policy in the sum of $6,000.00"; to dismiss his writ of garnishment issued and served upon John Hancock; and that the cause be remanded to the Union Chancery Court. John Hancock filed a response to the motion in which it objected to the dismissal of the claim of plaintiff Munn against it and to the remand of the claim made by Munn against it for any money that might be owing by it to Mrs. Ora V. Robison. John Hancock did not object to the remand of the issues directly between the plaintiff Munn and the defendant Mrs. Ora V. Robison. On February 10, 1950, the court overruled the plaintiff Munn's motion to dismiss its claim against John Hancock, because Munn and Mrs. Robinson were in court on the interpleader of John Hancock, and sustained the motion to remand as to the issues between the plaintiff Munn and the defendant Mrs.

Robison not involving the insurance policies.

The above reflects all of the action taken by the plaintiff Munn in either Civil No. 499 or Civil No. 506, although the attorneys for the plaintiff Munn have been present in court and have cooperated in the subsequent proceedings in the contest between Mrs. Ora V. Robison, as beneficiary in the policies, and John Hancock.

In view of these facts the court is of the opinion that it would be inequitable to require Mrs. Robison to pay any part of the attorney's fee allowed her to plaintiff Munn to be used by him in paying his attorneys for their services in prosecuting his claim against Mrs. Robison.

There is no just reason for delay in rendering final judgment against John Hancock on the motions of Mrs. Robison for judgment on the pleadings or for summary judgment, and those motions should be granted and judgment entered as follows:

On Policy No. 4492471 for $1,000.00, and interest thereon at 6% from December 5, 1949, together with a penalty of 12%, or $120.00, and an attorney's fee of $250.00 in favor of Mrs. Robison. This judgment should further provide that John Hancock be discharged from any and all liability on said policy to the plaintiff in Civil No. 499, E. J. Munn.

On Policy No. 4483188 John Hancock is liable in the principal sum of $6,000.00, and interest thereon at 6% from December 5, 1949, together with penalty of 12%, or $720.00, and an attorney's fee of $1250.00, and the judgment should provide that the total sum should be paid into the registry of the court to be held by the Clerk pending the adjudication of the rights of Mrs. Robison and the plaintiff, E. J. Munn, to the amount adjudicated to be due on this policy. The plaintiff, E. J. Munn, and his attorneys of record are not entitled to share in the attorney's fees herein adjudged to be due Mrs. Robison and her attorneys of record.