**BARBER, District Director v.
TADAYASU ABO et al.**

**BARBER, District Director v.
KANAME FURUYA et al.**

Nos. 12195, 12196.

United States Court of Appeals
Ninth Circuit.

Jan. 17, 1951.

As Amended on Denial of Rehearing
Feb. 27, 1951.

H. G. Morison, Asst. Atty. Gen., Washington, D. C., Frank J. Hennessy, U. S. Atty., Robert B. McMillan, Asst. U. S. Atty., San Francisco, Cal., Enoch E. Ellison, Sp. Asst. to the Atty. Gen., Paul J. Grumbly, Atty., Dept. of Justice, Washington, D. C., for appellant.

Wayne M. Collins, San Francisco, Cal., for appellees.

Before: DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

DENMAN, Chief Judge.

These are appeals from two judgments of the district court granting the amended applications in each case,[1] for writs of habeas corpus against respondent Irving F. Wixon, District Director of the Immigration and Naturalization Service, predecessor in office of appellant Barber, and ordering appellees' release from his custody.[2]

The application alleged that each of the applicants is a native born United States citizen of Japanese ancestry who had foresworn his allegiance to the United States in proceedings under § 401(i) of the Nationality Act of 1940, as amended,[3] and that respondent held each in custody for the purpose of deporting him to Japan as an enemy alien subject of that country, with whom we are at war.

The application also alleged that the renunciations were procured by coercion attributable to the United States while they were held in an internment camp at Tule Lake under conditions substantially the same as those found by this court in Acheson v. Murakami, 9 Cir., 176 F.2d 953; that many of the applicants were not yet 21 years of age when they renounced and hence were incapable of renouncing; and that each renunciation had been rescinded by each applicant. These tendered issues were joined by denials of the coercion and the claim that persons under 21 were capable of renouncing citizenship under § 401(i).

The amended return of the respondent to the application alleged, in justification of the intended deportation to Japan, that each of the applicants "is an alien and a citizen and a subject of Japan," and that "the Attorney General has made a finding of dangerousness as to each Petitioner, acting within his powers pursuant to the Alien Enemy Act of 1798 [50 U.S.C.A., § 21] and to Presidential Proclamations 2525 and 2655 [55 Stat. 1700, 59 Stat. 870] and to the Regulations issued by him thereunder (10 F.R. 12189)." A traverse to the amended return denied that "each petition-

---

1. Certain of the applicants were released from custody during the proceedings below.

2. In the consideration of these appeals the appellees, applicants below, are called applicants; the appellant is called respondent.

It is stipulated that the records in the two cases are identical. Accordingly, both cases are disposed of in this opinion although the applicants in the two cases are different.

3. Sec. 401. A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

"(i) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense: * * *." 54 Stat. 1168, as amended by Act of July 1, 1944, 58 Stat. 677, 8 U.S.C.A. § 801(i). The Act of July 1, 1944, added subsection (i).

er and/or any petitioner is an alien and/or a citizen and/or subject of Japan."

The applicants moved the court (a) for a judgment on the pleadings and (b) for summary judgment. The respondent moved for summary judgment.

In McGrath v. Tadayasu Abo, 9 Cir., 186 F.2d 766, decided today, we held that minors are incapable of renouncing under § 401(i). As to those applicants who were under 21 years of age when they executed the formal written document renouncing their citizenship, the judgments are affirmed and are ordered amended to state their names. The remainder of this opinion deals only with those who were competent adults when they renounced.

■ The motion for judgment on the pleadings does not differ from a motion for summary judgment unless *dehors* the pleadings there are agreements or affidavits on facts placed in issue by the pleadings. Here an attempt was made by the respondents to show that the law of Japan created a dual citizenship by offering in evidence two unverified statements of Japanese statutes. That they are attached to an affidavit describing the makers of the statements does not give these the affidavit quality. The motion to strike these statements on the ground of hearsay should have been granted. The best evidence of Japanese statutes is the certificate of the lawful custodian of the record of the statutes of Japan.

As seen, on the pleadings two issues are tendered. One is that each applicant's renunciation was made under duress and has since been rescinded by him and hence he is an American citizen and hence not deportable as an alien enemy. The other is that each is not deportable because he is not a citizen of Japan.

The district court ignored these statements of Japanese law and in effect proceeded to give a judgment on the pleadings. It thought it unnecessary to consider the first issue joined or what the Japanese law provided.

■ It held that no matter what right the renunciant-applicants might have to assume Japanese citizenship, that right cannot be exercised by them while they are in the United States. Its opinion states: "Nevertheless, absent any express declaration of Congressional intent, there is no justification for holding that under the Alien Enemy Act, a native born resident American citizen, who renounces his American citizenship pursuant to Sec. 801 (i) [401(i) of the Nationality Act of 1940], may be deported [to Japan], at least as long as he continues to reside here." [4]

We do not think Congress has to grant express permission to those residing in the United States who are not citizens to choose any allegiance they may desire. Here it well may be shown that each before renunciation sought Japanese citizenship or that afterwards he claimed it.

For instance, if the evidence should show the fact to be that under the law of Japan each applicant has the citizenship of Japan and that under that law each may assert his Japanese citizenship at any place, we think a person so permitted to renounce American citizenship may assert his Japanese citizenship in the United States without any permission from Congress.

Per contra, if the fact be shown that the law of Japan provides that an American born son of a Japanese citizen has no Japanese citizenship at birth, a different situation may exist.

■ It is to be noted that the amended application of the several applicants does not describe each to be a child of a Japanese alien. Each is alleged to be no more than a person of "Japanese ancestry." Each plaintiff well may be the child of an American born citizen whose grandparents were of Japanese origin. The Japanese law when shown may or may not purport to extend its citizenship to a child of an American citizen becase such parent has a Japanese ancestor. Mere renunciation of one citizenship does not of itself create another. It is only by the law of the nation of the successor citizenship that the re-

4. Ex parte Tadayasu Abe, D.C., 76 F.Supp. 664, 667.

nunciant may attain it. Cf. Elk v. Wilkins, 112 U.S. 94, 5 S.Ct. 41, 28 L.Ed. 643.

 We express no opinion on any of these situations for the law of Japan, like any foreign law, is a fact to be determined by the trial court. Likewise the allegation that one is a citizen of a country or state is an allegation of fact to be proved as to each applicant, just as in diversity of citizenship cases.

In McGrath v. Tadayasu Abo, supra, this day decided, is emphasized the duty of both the Attorney General and the courts to prevent the restoration of citizenship to those who renounced because of their loyalty to our enemy, Japan. The adult applicants here are among the few who are held in restraint for deportation. Among these are most likely to be found those to whom it would be dangerous to restore their citizenship.

 The appellees here contend that § 401(i), permitting a citizen, on his own initiative, to renounce his citizenship, is discriminatory class legislation because its history shows that it was expected that the voluntary right to renunciation would be claimed only by Japanese descended American born citizens. There is no merit to this contention. A statute fair on its face is not invalid merely because Congress, in considering creating such a general right, directs its attention to a particular group as exemplifying the desirability of creating such a right. Section 401(i) reads: "A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * * making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense: * * *."

It is apparent that on its face § 401(i) is not class legislation; the right it creates

as well could have been sought by American born citizens of German ancestry, since we were also at war with Germany. Moreover, as noted above, whether or not citizenship is lost by operation of the statute depends entirely upon the voluntary action of the individual in making application to renounce; the initiative rests wholly with him.

 Appellees make the further contention that even though § 401(i) is equal on its face it is to be deemed an unwarranted war-time class legislation because, they claim, the statute was applied only to persons of Japanese ancestry. We are not impressed by this argument, since we are not directed to any evidence showing that the right to renounce was systematically or arbitrarily denied citizens of other than Japanese ancestry.[5]

The judgments are reversed as to appellees other than minors and the applicants released from custody and the cause remanded for further proceedings on the issues raised by the pleadings, in accordance with this opinion.

---

5. The case is unlike those where laws restricting existing rights are enforced only against a particular class, as in Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.