## NATIONAL SURETY CORP. v. FIRST NAT. BANK IN INDIANA et al.

### Civ. A. 7992.

United States District Court
W. D. Pennsylvania.
July 16, 1952.

James J. Burns, Jr., Pittsburgh, Pa., for plaintiff.

Miller & Miller, Pittsburgh, Pa., for 1st National Bank in Indiana.

John Duggan, of James P. McArdle, Pittsburgh, Pa., for Gilbert S. Parnell.

GOURLEY, Chief Judge.

This matter comes before the Court on motion of defendants for judgment on the pleadings and/or summary judgment.

This proceeding originated as an action in replevin to recover West Penn Power Company bonds of the par value of $20,000. An indemnity bond was given in the sum of $40,000 by plaintiff, conditioned to maintain title to the bonds as against the defendants, and when the writ of replevin was served upon the First National Bank in Indiana it delivered to the United States Deputy Marshal the bonds in question. After the expiration of 72 hours the bonds were delivered by the United States Marshal to the plaintiff. After defendant bank filed its answer it then, under Rule 36, Paragraph (a) of Federal Rules of Civil Procedure, 28 U.S.C.A., filed requests on plaintiff for admissions.

The important points in these requests admitted are as follows:

(a) The bonds were negotiable and payable to bearer.

(b) G. S. Parnell, on September 10, 1948, delivered the bonds to defendant bank with a written order to sell them for his account.

(c) Pursuant to the sale made under said order by Hemphill Noyes & Company to Salomon Brothers and Hutzler, of New York City, said Salomon Brothers and Hutzler became holders thereof in due course.

(d) Pursuant to said sale and upon delivery of the bonds to Hemphill Noyes & Company for the purchasers, Salomon Brothers and Hutzler, Hemphill Noyes & Company paid the sale price $21,497.90 to defendant bank.

(e) Upon receipt of the proceeds of the sale of said bonds on September 17, 1948, defendant bank deposited to the account of G. S. Parnell the sum of $21,497.90 less a small credit of $8.81 for postage and insurance.

(f) The defendant bank, after having paid the sale price for the bonds to G. S. Parnell on January 9, 1949, was notified by Salomon Brothers and Hutzler, who admittedly were holders in due course through Hemphill Noyes & Company that a stop order had been lodged with West Penn Power Company against the transfer thereof, and demanded delivery in lieu thereof of like bonds.

(g) Defendant bank, on January 19, 1949, purchased and replaced like bonds to take the place of the bonds in question which were delivered through Hemphill Noyes & Company to Salomon Brothers and Hutzler and thereupon the bonds in question were redelivered to defendant bank.

(h) The defendant bank retained possession of said bonds following the date of their re-delivery until the writ of replevin

was served in this case, at which time said bonds were delivered to the United States Deputy Marshal.

■ The office of the motion for judgment on the pleadings or for summary judgment is for practical purposes the same, and often are both applicable, but if it is necessary to consider matters outside pleadings, motion for judgment on the pleadings is to be treated as a motion for summary judgment, and neither can be granted if there is any genuine issue as to any material fact. Barber, District Director v. Tadayasu, 9 Cir., 186 F.2d 775; Munn v. Robinson, D. C., 92 F.Supp. 60.

■ Before such motion can be granted the right thereto must be clear. Hutchings v. Lando, D.C., 7 F.R.D. 668. And it must appear to be a certainty that the plaintiff woud not be entitled to relief under any state of facts which could be proved in support of his claim. Michel v. Maier, D.C., 8 F.R.D. 464.

Under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. which provides for summary judgment, it was not intended to deprive litigants of a right to full hearing on the merits if any issue of fact exists. The procedure was not intended to be used as a substitute for regular trial where the outcome of the litigation depends upon disputed questions of fact. Merchants Indemnity Corp. of New York v. Peterson, 3 Cir., 113 F.2d 4; Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016.

■ In passing upon a motion for summary judgment, it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167.

■ In the exercise of fair and impartial judgment as to the question of title and exclusive right of possession of the bonds, I must take cognizance of certain irrefutable facts which are inextricably bound into the present proceeding. The court may resort to any means the court deems safe to refresh its memory. Greeson v. Imperial Irrigation District, 9 Cir., 59 F.2d 529; Rank v. Krug, D.C., 90 F.Supp. 773.

■ Two of the defendant bank directors, namely, Gilbert S. Parnell and Paul J. Straitiff, testified as witnesses in Criminal Action No. E-5016 in the United States District Court for the Western District of Pennsylvania involving the prosecution and conviction by the United States of America of one Arthur Rocco for the transportation of certain securities, including those now in suit, in Interstate Commerce with knowledge that the bonds were stolen. New trial was refused. United States v. Rocco, D.C., 99 F.Supp. 746, affirmed, 3 Cir., 193 F.2d 1008.

In the Rocco proceeding, there was introduced in evidence the testimony of certain Blyth & Company employees, that is to say, William Raymond Larkin, John Franklin West, Edward Joseph Meacher, Edward Francis McDonnell, and George A. Busweiler, who stated into the record that the bonds in suit disappeared from the Blyth & Company Office in New York on July 21, 1948, without the knowledge or consent of any of Blyth & Company's responsible agents. For these reasons, therefore, the defendant Bank having entirely failed to establish any contrary contention, it must be assumed for the purpose of this argument that the title of at least one intervening holder of these bonds between Blyth & Company and defendant Bank, was defective.

■ Finally, the defendant Bank has also conceded that on September 2, 1948, Blyth & Company assigned whatever interest it had in these bonds to the plaintiff. Since the Bank does not contend that it ever came into possession of these bonds until September 10, 1948, it is at once apparent that the present suit is one between a party having the rights of an earlier and one having the rights of a later holder of a negotiable instrument, with some intervening holders having possessed a defective title. In such case the burden is on the Bank to prove that it or some person under

whom it acquired title was a holder in due course. Negotiable Instrument Law, § 59, 56 P.S.Pa. § 139.

Assuming that the defendant Bank purchased the bonds in suit on January 19, 1949, through Hemphill, Noyes and Company from Salomon Brothers and Hutzler, who admittedly were holders in due course, a factual question continues to remain unresolved.

■ For Section 58 of the Negotiable Instrument Law, 56 P.S.Pa. § 138, provides that while a holder who derives the title through a holder in due course has all the rights of such former holder in respect to all parties prior to the later, this is not the case where the later holder is "a party to any fraud or illegality affecting the instrument".

If the Bank had knowledge of the defect in the past title of these bonds when it accepted them from Parnell in September, 1948, it having failed to establish any intervening holder in due course between Parnell and his principal, Rocco, and Blyth and Company, and if it nonetheless proceeded to negotiate these bonds through Hemphill, Noyes & Company to Salomon Brothers, it thereby became a "party to a fraud or illegality affecting" these instruments, with the result that its rights to possession thereof are inferior to those of the plaintiff.

The negotiation of these bonds conducted between Rocco and Parnell, an attorney and director of the defendant Bank, as well as between Parnell and Straitiff, cashier and also director of defendant Bank, is shrouded in considerable mystery and suspicion. *Is it natural for an attorney, who was entrusted with the directorship of a bank, to cash such securities, particularly in behalf of a person whom he had never previously met?* When Parnell signed the sales order as "attorney", why had not Straitiff, the cashier and director, made any effort to ascertain the principal involved?

I am in no way convinced that defendant Bank, through some of its responsible directors, and defendant Parnell, did not know or should not have known of the defect in the past title of these bonds at the time of their negotiation.

Consequently, a crucial question of fact is posed which is not without substantial dispute, the determination of which depends upon what the facts are found to be after a full and complete hearing of the proof to be offered by all of the parties.

Motion in behalf of the First National Bank in Indiana for judgment on the pleadings and/or summary judgment is refused.

Motion in behalf of Gilbert S. Parnell for judgment on the pleadings and/or summary judgment is refused.

An appropriate Order is entered.